## Kankakee Electric Railway Co. v. John Lade.

1. STREET CARS—*Frightening Horses.*—A street car company has the same right with its cars to a street that an individual with a team has, and is only bound to use ordinary care with reference to the latter's safety. It is not responsible for injuries resulting from the team being frightened at the sight of the cars, unless the company fails to use reasonable care to avoid damages after discovering the danger.

2. RAILROAD COMPANIES—*Use of Streets.*—A railroad company with a track along a street is entitled to the use of the street equally with teams, and if horses are frightened at the cars in their ordinary operation, the company is not liable.

3. VARIANCE—*Pleadings and Proof.*—Under a declaration describing an ordinance as requiring the servants of a street car company, in case they saw "horses approaching and they appeared frightened, to stop its cars and allow them to pass," an ordinance only requiring such servants to keep a vigilant watch for carriages, etc., etc., and govern themselves accordingly to avoid damages, is not admissible.

4. INSTRUCTIONS—*Street Cars and Frightened Horses.*—In an action for injuries sustained by the frightening of horses by electric cars, it is erroneous to instruct the jury that if the company "by watching out could have seen the plaintiff with his team, and that the team was frightened, then it was its duty to have done what it could to avoid accident," as being too strict in its requirements.

5. SAME—*Not to State What Acts Constitute an Exercise of Ordinary Care.*—In an action for damages sustained by the frightening of horses by electric cars, it is error to instruct the jury that when the company's servants saw the horses it was their duty to have stopped the car and allowed the horses to get out of danger, because it tells the jury what particular acts the company's servants must do in order to be within the exercise of ordinary care.

**Memorandum.**—Action for damages, frightening horses. In the Circuit Court of Kankakee County; the Hon. CHARLES R. STARR, Judge, presiding. Declaration in case and plea of not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed December 13, 1894.

WHEELER & HUNTER, attorneys for appellant.

H. L. RICHARDSON and E. E. DAY, attorneys for appellee.

MR. PRESIDING JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a suit in action on the case, by appellee, instituted in the Circuit Court against appellant, to recover for injuries caused, as alleged in the declaration, by appellant's car frightening appellee's horses while he was driving them across the Kankakee river bridge at Kankakee, Ill., resulting, as is claimed, in injuries to appellee. There was a verdict and judgment for appellee for $400, from which this appeal is taken.

The declaration contained two counts, one charging negligence on part of appellant in violating an ordinance of Kankakee City, which it averred provided that appellant must stop its cars when it met a team that was frightened by their appearance and wait until the team got by, and that appellant's servants saw appellee's team approaching and neglected to stop their car, and carelessly and negligently and knowingly ran down near the appellee's horses and frightened them, causing them to run away and injuring appellee, by throwing him out of his wagon. Second count charged this duty on appellant but did not plead the ordinance.

The cause was tried by a jury, and it appeared from the evidence of appellee that he was a farmer residing near Kankakee City, and on the 15th of April, 1893, went with his team and wagon to the city to get groceries and arrived there about four o'clock in the afternoon; that when he got to the river bridge over which the cars of appellant passed, he saw one of its cars approaching, he coming from the south; that he motioned and hallooed to the defendant's servants to stop the car; that he first saw the car about four rods from the bridge right by the mill, and when he first saw it he stopped a little and drove a little further on and then came the cars about four rods from the bridge; that the car was about two rods from him when he hallooed to it; that the cars were right beside him when his horses ran away, and three of his ribs were broken, and he was ruptured and was in bed four months. The men on front of the car did not look at him when he hallooed.

It does not appear very clear from appellee's evidence whether he was on the bridge before he saw the appellant's car or not. The motorman, Patrick Powers, testified that he, in charge of the car, met appellee on the bridge with his team; that his car was not quite a span on the bridge when appellee first drove on, and when he saw appellee he was standing in his wagon, lines in one hand, that is, he had the lines doubled in his hand and had the ends of the lines in the other hand, and was continually whipping his horses, and so he stopped the car. The conductor rang the bell for him to go on and he ran the car slowly until about sixty feet of appellee, and then stopped and said to him, "Hold on and don't whip the horses and I will help you by;" but the horses were going so fast he dare not go in front of them, and just as he came to the front end of the car his team made a lunge forward, and the front wheels of his wagon struck one of the standards of the bridge and they jerked and broke the wagon tongue; it dropped down and the horses ran away. The horses trotted all the time till they came within 100 feet of him and then they commenced to gallop. Witness did not hear appellee call to him to stop. All he said was "Whoa" and "Get up." The bridge is about 1,000 feet long The team was coming toward the car in a fast trot and looked frightened and that was the reason he stopped. Powers' testimony was corroborated by that of the conductor of the car, Ezra Dachen.

It is apparent from the evidence that appellee and the servants of appellant went on the bridge before either saw that the other was on.

The bridge is 1,000 feet long, and appellee says he called to the motorman when he was two rods away. The appellant had the same right on the street and bridge with its cars as the appellee, and was only bound to use ordinary care with reference to his safety. The appellant would not be responsible for any injuries resulting to appellee from the team being frightened at sight of the cars being operated on the streets, unless it failed to use reasonable care to avoid damages after discovering that there was danger by the fright of teams or otherwise.

It is laid down by Rorer on Railroads, Vol. 1, p. 705, that "a railroad along a street is entitled to the use of the street equally with teams, and if horses are frightened in ordinary operation, the railroad company is not liable." Macomber v. Nichols, 34 Mich. 214. We can not see what appellant's servants could have done that they did not, after they saw appellee's team was frightened and there was danger. They stopped the cars before the team reached them, sixty feet before, and the cause of the accident was that the horses shied when they came to the cars; they were frightened at the car while it was standing still.

The court ought not to have admitted the ordinance under the pleading. The declaration described it as requiring the appellant, in case its servants saw the horses of appellee approaching, and they appeared frightened, "to stop its cars and allow his horses to pass." The ordinance only required appellant's motorman "to keep a vigilant watch for carriages, etc., etc., and govern himself accordingly to avoid damages." In any given case, under this ordinance, the motorman was only required to use vigilance in discovering danger, and to use reasonable care to avoid it. It was not a matter of law that it was negligence *per se* if the cars were not stopped. What reasonable effort the motorman should make to avoid causing damages after seeing danger, was a question of fact for the jury. There might be circumstances where to stop the car would be to cause damage instead of to avoid it.

The appellee's first instruction is erroneous in telling the jury, that if appellant, "by watching out, could have seen plaintiff with his team, and that the team was frightened, then it was its duty to have done what it could to avoid accident."

It will be seen that this instruction was too strict in its requirements. When the appellant's servants saw that appellee's team was frightened, it was only their duty to use reasonable care to avoid injury. And this they were required by law to do. In fulfilling this obligation they would be governed by all the surroundings and circumstances of the case.

The sixth instruction is also erroneous in telling the jury that when appellant's servants "saw the plaintiff's horses were frightened, then it was the duty of the defendant company to have stopped its car and allowed plaintiff to get out of danger." This instruction was erroneous in telling the jury what particular act appellant's servants must do in order to be within the exercise of ordinary care. That was a matter of fact for the jury, and not the court, to determine. The jury, if left to decide what ordinary care on part of appellant required under the circumstances to prevent or avoid accident, may have found that it was not necessary for appellant to stop its car any sooner than it did, or that it was not necessary to stop it at all. The court, by this instruction, invaded the province of the jury. Then there is an intimation in the instruction that appellant's motorman did not stop the car, when the evidence shows that he stopped it within sixty feet of appellee's horses. The jury, if left to determine the question, may have deemed this ordinary care on the part of appellant to avoid the accident and injury to appellee. Nor is the above error excused by the court erring in the opposite direction by giving appellant's instructions seven and twelve; nor is it cured because other proper instructions were given for appellant.

For the above errors pointed out, the judgment of the court below is reversed and the cause remanded.